IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Carolyn Garrison Bostic, *individually and as personal representative of the estate of Scott O'Neal Bostic,*<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Sandra M. Bostic,[1]<br><br>　　　　　　　　　　Defendant. | Civil Action No.: 6:14-2130-BHH<br><br><br><br><br><br>**OPINION AND ORDER** |

This matter is before the Court on the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(c). (ECF No. 16.) The plaintiff claims she is entitled to the insurance benefits due under a policy of life insurance, which is in the name of her deceased husband, Scott Bostic. The defendant, however, contends she is the proper beneficiary of such proceeds and that the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, preempts any statutory claim of the plaintiff. The plaintiff filed a response in opposition (ECF No. 25).

**STANDARD OF REVIEW**

After pleadings are closed a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)[.]" Fed. R. Civ. P. 12(h)(2)(B).

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the

---

[1] Prudential Insurance Company of America was a named defendant when the case was filed, but was dismissed from this action on September 19, 2014. It has deposited, with the Court, the insurance benefits at issue, in the amount of $23,264.89, including interest. (ECF Nos. 18, 24.)

same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). To withstand a motion for judgment on the pleadings, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a defense of failure to state a claim a court will "separat[e] the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determin[e] whether those allegations allow the court to reasonably infer that the defendant is liable for the misconduct alleged." *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Thus, a judgment in favor of the movants under Rule 12(c) is appropriate where the facts stated in the complaint are insufficient to support recovery under otherwise cognizable legal theory. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

"In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court may . . . consider a 'written instrument' attached as an exhibit to a pleading." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Under Rule 10(c) "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## **DISCUSSION**

The plaintiff was the wife of Scott Bostic at the time of his death and the sole beneficiary of his intestate estate. (Compl ¶ 3.) The defendant is Scott Bostic's ex-wife and the named beneficiary of his life insurance policy, issued by the Prudential Life Insurance of America through Scott's former employer, Walmart. *Id.* ¶ 9. The plaintiff contends that pursuant to South Carolina statute she should take pursuant to the policy, notwithstanding the defendant's express designation as beneficiary. *Id.* ¶ 10.

The Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, commands that a plan shall "specify the basis on which payments are made to and from the plan," *id.* § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," *id.* § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan," *id.* § 1002(8); *see Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). In other words, ERISA dictates that the defendant, in this case, should receive the benefits of the life insurance policy at issue, as she is the designated beneficiary of that plan.

South Carolina, however, by express statutory mandate, has decided, as a matter of public policy, that a deceased spouse should not benefit from beneficiary designations made prior to a divorce unless that prior designation is later specifically confirmed by a court order or contract. *See* S.C. Code. § 62-2-507. The applicable statute reads in relevant part:

> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:

> (1) revokes any revocable:
>
>> (I) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument;
>>
>> (ii) provision in a governing instrument conferring a general or nongeneral power of appointment on the divorced individual's former spouse; or
>>
>> (iii) nomination in a governing instrument, nominating a divorced individual's former spouse to serve in any fiduciary or representative capacity, including a personal representative, trustee, conservator, agent, attorney in fact or guardian

*Id.* Accordingly, Section 62-2-507 says that the designation of the defendant is revoked and, therefore, the plaintiff should take.

The defendant argues that the statute relates to, and attempts to affect, benefits paid pursuant to an employee benefit plan and is, therefore, preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Id.* § 1144(c). The Supreme Court has explained that Congress used language that was "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

> A law "relates to" an employee benefit plan, in the normal sense of the phrase if it has a connection with or reference to such a plan. Under this "broad common sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Ingersoll-Rand Co. v. McClendon*, --- U.S. ----, 111 S.Ct. 478, 483 (1990) (citations

-4-

omitted).

Critically, the Fourth Circuit has agreed that generally "the designation of the beneficiary of an ERISA life insurance policy 'relates to' an ERISA plan." *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 560 (4th Cir. 1994) (citation omitted) (citing *Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904, 906 (10th Cir.1991) (applying ERISA preemption provision because the designation of beneficiaries to the life insurance policy "relates to" the ERISA plan); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990) (finding designation of beneficiaries "plainly relates" to the ERISA plans at issue)).

So, if Section 62-2-507 is preempted, then the defendant is the rightful beneficiary. If it is not, the plaintiff should receive the insurance proceeds. Previously dismissed defendant, Prudential Life Insurance, has already deposited the insurance proceeds, in the amount of $23,264.89, with the Court pending disposition of this case. (ECF Nos. 18, 24.)

The United States Supreme Court has already decided that such a revocation statute, as Section 62-2-507, is preempted by ERISA. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001). The Supreme Court, in *Egelhoff*, concluded, on comparable facts, that a nearly identical state law provision of Washington "related to" an employee benefit plan and, therefore, was preempted. *Id.* at 147. The Washington statute similarly attempted to renege the designation of an ex-spouse as beneficiary upon the death of the insured. *Id.* The statute impermissibly implicated "an area of core ERISA concern," insofar as it attempted to dictate to whom benefits should be paid. *Egelhoff*, 532 U.S. at 147.

The Tenth Circuit in *Metro. Life Ins. Co. v. Hanslip*, 939 F.2d 904 (10th Cir. 1991), had anticipatorily so concluded concerning a similar Oklahoma statute.

Section 62-2-507(c)(1), therefore, is expressly preempted, here, as it relates to an

employee beneficiary plan in its clear purpose to designate a beneficiary of an employee insurance plan. *See Egelhoff*, 532 U.S. at 148; *Phoenix Mut. Life*, 30 F.3d at 560.

Even still, the plaintiff persists and argues that as a domestic relations law, Section 62-2-507 supercedes federal law in this sphere, however. As the plaintiff cites, it is true that express waivers of ERISA plan benefits set forth in divorce judgments are not preempted by ERISA. *See Andochick v. Byrd*, 709 F.3d 296 (4th Cir.); *Metropolitan Life Ins. Co. v. Barlow*, 884 F. Supp. 1118, 1124 (E.D. Mich.) (quoting from *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir. 1994)). But, again, the United States Supreme Court's decision in *Egelhoff* has already resolved it. "[W]e have not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans." *Egelhoff*, 532 U.S. at 151. The general axiom that there is no federal law in domestic relations cases, therefore, clearly does not override the otherwise plain conclusion of the United States Supreme Court and this Circuit that state statutes, even those in family law, may not circumvent ERISA beneficiary designations. *See id.; see also Phoenix Mut. Life*, 30 F.3d at 560; *Hanslip*, 939 F.2d at 906.

The plaintiff next argues the last subsection of Section 62-2-507, which cleverly reads as follows:

> (2) If this section or any part of this section is preempted by federal law with respect to a payment, an item of property, or any other benefit covered by this section, a person who, not for value, receives a payment, item of property, or any other benefit to which that person is not entitled under this section is obligated to return that payment, item of property, or benefit, or **is personally liable for the amount of the payment or the value of the item of property or benefit, to the person who would have been entitled to it were this section or part of this section not preempted.**

S.C. Code § 62-2-507(h)(2) (emphasis added). In other words, the statute, recognizing its own likely encroachment into federal predominance, attempts an end run around preemption to make the ERISA designated beneficiary actually personally liable to the individual that would have claimed the benefit had 62-2-507(c)(1) *not been preempted*. It establishes a kind of constructive trust in the benefits. The ERISA designee becomes a mere pass through to the individual the statute prefers. The subsection, however, is more the statutory equivalent of adding one to infinity, the classic technique in juvenile repartee used successfully by six year olds everywhere. As in, "Oh yeah? Well I hate you infinity plus one!" It seems not suitable to save the statute's intent in the way it proclaims.

As an initial matter, this subsection would seem to be preempted for the same reasons subsection (c)(1) is. Effectuation of subsection (h)(2) necessarily requires recourse and application of (c)(1), as the defendant emphasizes. In order to determine to whom the ERISA designee is liable, under (h)(2), one must look to the "person who would have been entitled to [the benefit] were this section or part of this section not preempted." *Id*. Subsection (h)(2), therefore, continues to improperly "relate to" the benefit plan insofar as it effectively directs the designee, albeit a degree removed.

Additionally, similar preemption-avoiding provisions of other states have been found to be ineffective to circumvent the preemptive force of comparable federal statutory schemes as ERISA. Most notably, the Virginia Supreme Court in *Maretta v. Hillman*, 722 S.E.2d 32, 33 (Va. 2012), dealt with a nearly identical preemption-avoiding provision:

> [if Code § 20–111.1(A) ] is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit

> that the former spouse is not entitled to under this section is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted.

Va. Code § 20-111.1(D).  The Virginia Supreme Court relied on the United States Supreme Court decision, in *Ridgway v. Ridgway*, 454 U.S. 46, 54 (1981), which concluded that a state law imposing a constructive trust on the benefits at issue was preempted by the Servicemen's Group Life Insurance Act (SGLIA).  In light of the virtually identical language used in the Federal Employees' Group Life Insurance Act (FEGLIA), the Virginia Supreme Court concluded, pursuant to *Ridgway*, that it is Congress' intent that "only [the insured] [has] the power to create and change a beneficiary interest," and that the right to do so cannot be waived or restricted, and that the FEGLIA benefits belong to the named beneficiary, notwithstanding the preemption-avoiding language of Va. Code § 20-11.1(D). *Maretta*, 722 S.E.2d at 33.  In so concluding, the Virginia Supreme Court recognized Congress' intent that the benefits belong to the named "beneficiary and no other" and the Virginia statute was preempted to the extent it frustrated that purpose.  *Id*. at 36.

"FEGLIA, SGLIA, and ERISA are structured similarly, and the reasoning in *Maretta* and *Ridgway* are applicable to ERISA."  *Griffin v. Cowser-Griffin*, 2012 WL 9737556, at *5 (Va. Cir. 2012).  FEGLIA contains an "order of precedence" that directs to whom the benefits under the policy are paid. 5 U.S.C. § 8705(a).  Additionally, FEGLIA has a preemption provision. 5 U.S.C. § 8709(d)(1).  SGLIA also has an order of precedence provision setting forth the statutory order of precedence for beneficiaries, 38 U.S.C. § 1970(a), and an anti-alienation provision prohibiting "attachment, levy, or seizure" from creditors' claims before or after distribution. 38 U.S.C. § 1970(g).  ERISA, like FEGLIA and

SGLIA, requires the plan administrator to pay the benefits to the designated beneficiary and, like FEGLIA, expressly preempts "all State laws" that "relate to" an ERISA plan. 29 U.S .C. § 1104(a)(1)(D) (2012); 29 U.S.C. § 1144(a) (2012).  Critically, ERISA also has a provision prohibiting assignment or alienation, not unlike SGLIA's anti-alienation provision. 29 U.S.C. § 1056(d)(1) (2012); *see also Ridgway*, 454 U.S. at 60.

Even if a direct line cannot be perfectly drawn between the consideration of FEGLIA and the Virginia statute and the preemptive effect of ERISA and the statute at issue in this case, the Court safely concludes that Section 62-2-507(h)(2) undermines a core purpose of ERISA's preemption scheme.  In enacting the preemption provisions, Congress wanted "'to ensure that plans and plan sponsors would be subject ***to a uniform body of benefit law***; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.'" *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992).  Such a preemption-circumventing provision in South Carolina will produce a very different result in jurisdictions that have no such statutory safety valve.  "One of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Uniformity is impossible, however, if plans are subject to different legal obligations in different States." *Egelhoff*, 532 U.S. at 148.  Subsection (h)(2) does not avoid the preemptive effects of ERISA.

The plaintiff lastly contends that, regardless of the fact that the state law "relates to the plan," it is nevertheless "saved" by the fact that it "regulates" the insurance industry.

It is true that ERISA's insurance "savings clause" excludes from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). But, the United States Supreme Court has stated that "a state law must be 'specifically directed' toward' the insurance industry in order to fall under ERISA's savings clause [and that] laws of general application that have some bearing on insurers do not qualify." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003) (citation omitted).

The Supreme Court has set forth criteria for determining whether a state law "regulates" the insurance industry as required by the saving clause. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48–49 (1987). First, a court must take what guidance is available from a "common-sense" view of the language of the saving clause itself. *Id.* As noted in *Pilot Life*, "[a] common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* at 50. Clearly, insurance policies are only one of the many different types of "governing instruments," S.C. Code § 62-2-507, that can be affected by the statute, and, as such, the Court cannot say that the provision is "specifically directed toward" the insurance industry, but instead appears to only have "some bearing" on insurers. *Pilot Life*, 481 U.S. at 50.

Second, the court must examine what are known as the McCarran–Ferguson factors: (1) "whether the [law] has the effect of transferring or spreading a policyholder's risk"; (2) "whether the [law] is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the [law] is limited to entities within the insurance industry." *Id.* at 48–49. Section 62-2-507 does not spread policy holder risk. It is certainly not an integral part of the policy relationship between the insured and the insurer. Rather,

it concerns the relationship between the insured and the beneficiary.  Lastly, it is plainly not limited to entities within the insurance industry.  It is broadly applicable to any "governing instrument."  S.C. Code § 62-2-507.

Accordingly, the Court finds that ERISA's insurance "savings clause" does not apply to exempt Section 62-2-507 from ERISA preemption.  *See Harleysville Life Ins. Co. v. Harrelson*, 2011 WL 4544047, at *5 (E.D.N.C. Sept. 29, 2011).

## **CONCLUSION**

Based on the foregoing, the defendant's motion to dismiss (ECF No. 16) is GRANTED and the plaintiff's case dismissed *with prejudice*.  Accordingly, the defendant is the proper beneficiary of the insurance policy.  This Court retained jurisdiction in this action for purposes of determining the rights of the plaintiff and defendant with respect to the funds.  (ECF No. 20.)  It is hereby ORDERED that such funds shall be released to the defendant upon such time as the deadline for any motion to reconsider has elapsed.

IT IS SO ORDERED.

s/Bruce Howe Hendricks  
United States District Judge

September 3, 2015  
Greenville, South Carolina